```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
ROXANNE TORRES BEECHER,

                    Plaintiff,

         - against -                         MEMORANDUM AND ORDER

RIVERDALE RIDING CORPORATION d/b/a RIVER     08 Civ. 6062 (NRB)
RIDGE EQUESTRIAN CENTER, CHARLES RUSTIN
HOLZER  a/k/a  RUSTY HOLZER,  ANTHONY
ZUMPANO, JEANNE RUH, THEODORE BEALE, JR.
a/k/a TEDDY BEALE, ABC CORPORATION, a
fictitious corporation, and THE COUNTY OF
WESTCHESTER,

                    Defendants.
------------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Roxanne Torres Beecher ("Beecher") filed this action against defendants Riverdale Riding Corporation, Charles Rustin Holzer, Anthony Zumpano, Jeanne Ruh, Theodore Beale, Jr., and ABC Corporation pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the First Amendment to the United States Constitution, and New York State law. Defendants Anthony Zumpano ("Zumpano") and Jeanne Ruh ("Ruh") have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Specifically, Zumpano and Ruh move on the grounds that: (i) Beecher lacks standing to bring a RICO claim; and (ii) Beecher cannot state a claim for a violation of the First Amendment because she fails to allege any state action.

For the reasons stated below, we grant the instant motion for judgment on the pleadings.

**BACKGROUND**

The following facts are derived from the amended complaint and are accepted as true for the purpose of this motion.

**I.  The Parties**

**A.  Plaintiff**

Beecher, a resident of the State of New York and the County of Westchester, is a lawyer who is representing herself pro se in this lawsuit. Beecher boarded her horse at an equestrian facility operated by defendant Riverdale Riding Corporation ("Riverdale") and which is commonly referred to as the River Ridge Equestrian Center or the North Equestrian Stable at Twin Lakes Park ("River Ridge"). (Amended Complaint ("Am. Compl.") ¶¶ 15, 17.)

**B.  Defendants**

Riverdale is a corporation organized under the laws of New York and with its principal place of business in New York. In 1997, Riverdale entered into a license agreement with the County of Westchester, which enabled Riverdale to operate River Ridge as a public riding facility. In September 2006, Riverdale and the County of Westchester entered into a twenty-year lease

agreement, which authorized Riverdale's continued operation of the same facility.[1]  (Am. Compl. ¶¶ 15-21.)

Zumpano, a New York resident and one of the moving parties, is a Riverdale employee.  At various times, Zumpano has worked as a trail guide and as a facility manager.  In those capacities, Zumpano oversees the daily operations of River Ridge, including its hiring of employees.  (Am. Compl. ¶¶ 24-28.)

Ruh, the other moving party, is a New York resident and an employee of Riverdale.  She works as a riding instructor, office manager, and assistant manager at River Ridge and is responsible for a variety of tasks, including scheduling events, collecting fees, overseeing staff, drafting contracts, and preparing Riverdale's financial records.  (Am. Compl. ¶¶ 29-31.)

The non-moving defendants likewise have some relationship to River Ridge:  defendant Charles Rustin Holzer ("Holzer") is a resident of New York and owns and operates River Ridge; defendant ABC Corporation is a placeholder for other entities owned or controlled by Holzer; and defendant Theodore Beale, Jr. ("Beale") is a New York resident, is employed by Riverdale as its accountant, and boards his horse at River Ridge.  (Am. Compl. ¶¶ 22-23, 32-35.)

---

[1] Beecher originally named the County of Westchester as a defendant in this action.  On December 30, 2008, the County of Westchester moved to dismiss and on March 30, 2010, Judge Robinson granted that motion.

3

**II. Factual Background**

According to Beecher, for more than a decade, Holzer has carried out a number of so-called "bust out" schemes. When perpetrating such a scheme, Holzer will identify publicly-owned equestrian facilities in need of renovation and will enter into long-term leases with counties or municipalities to rent the facilities. Holzer will then negotiate low rental payments and will promise, in exchange for the below-market rent, to make substantial capital improvements to the facilities. (Am. Compl. ¶ 36.)

However, during the term of these leases, Holzer will not make the promised capital improvements nor will he pay rent. Instead, Holzer will loot the business, "leaving the lessors without the benefit of their bargain and the premises in a worse condition [than] when [Holzer] took over its operation." (Am. Compl. ¶ 36.) Beecher alleges that defendants perpetrated such a scheme against the County of Westchester and the individuals who board their horses at River Ridge. (Am. Compl. ¶ 4.)

Beecher contends that Zumpano and Ruh were players in this bust out scheme. Specifically, Beecher alleges that Zumpano and Ruh: (1) provided incomplete or false financial information to Riverdale's accountant, and in turn to the County of Westchester, for the purpose of evading payment of sales and income taxes; (2) gave preferential treatment to boarders who

4

paid their boarding fees in cash and failed to account for the cash payments in Riverdale's financial records; (3) charged boarders and riders more than the rates identified in the lease agreement; (4) failed to maintain complete and accurate financial records; (5) neglected to pay sales taxes to the New York State Department of Taxation and Finance; (6) failed to report bartered and cash income and, as a result, failed to pay state and federal taxes on such income; (7) erroneously identified employees of River Ridge as independent contractors and thus failed to comply with state and federal employment laws and regulations; (8) fraudulently prepared Form W-2s and Form 1099s for River Ridge personnel to understate income; (9) failed to pay salaries to or report income made by Ruh and another River Ridge employee; (10) hired unlicensed veterinarians; (11) employed minors in violation of state and federal labor laws; (12) failed to procure various permits and licenses required by the terms of Riverdale's license agreement and lease agreement with the County of Westchester; and (13) converted corporate assets. (Am. Compl. ¶¶ 93-98, 112-127, 129-175, 184-197).

Beecher also alleges that Zumpano: (1) failed to maintain the riding facility; (2) failed to provide adequate security for the facility in violation of the lease agreement; (3) diverted a percentage of the fees paid to the unlicensed veterinarians to himself; (4) mistreated the horses; (5) altered checks without

5

authorization to make them payable to himself; and (6) unlawfully leased Westchester County property adjacent to the River Ridge facility to third parties. (Am. Compl. ¶¶ 102-111, 161, 176-183, 198-206.)

According to Beecher, numerous state and local agencies have investigated defendants' conduct and Beecher has cooperated with these investigations. Beecher now alleges that the defendants, including Zumpano and Ruh, learned of her cooperation. As a result, Beecher alleges, defendants harassed her and evicted her from River Ridge. (Am. Compl. ¶¶ 207-218.)

**III. Procedural Background**

Beecher commenced this action on July 2, 2008 and filed an amended complaint on September 3, 2008. On May 13, 2009, Zumpano and Ruh filed a motion for summary judgment. After that motion was fully briefed, Judge Robinson concluded that that the motion should be converted to a motion for judgment on the pleadings. Beecher v. Riverdale Riding Corp., No. 08 Civ. 6062 (Mar. 30, 2009). However, because Beecher had not addressed Zumpano and Ruh's arguments in light of the Rule 12(c) standard, Judge Robinson refrained from ruling on the motion and directed the parties to submit opposition and reply briefs. The motion for judgment on the pleadings was fully briefed on June 15, 2010 and the case was reassigned to this Court on November 12, 2010.

**DISCUSSION**

**I. Legal Standard**

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the purposes of this motion, we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, here the plaintiff. Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). In other words, we apply the same standard under Rule 12(c) and under Rule 12(b)(6). Burnette, 192 F.3d at 56. Thus, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).

When reviewing this motion, we may consider the pleadings, documents attached as exhibits to the pleadings, materials incorporated by reference, and any other document that is "integral to the complaint." See Sira v. Morton, 380 F.3d 57, 66-67 (2d Cir. 2004). Accordingly, consistent with Judge Robinson's Memorandum and Order, dated March 30, 2010, we consider only the pleadings and the lease agreement between Riverdale and the County of Westchester, upon which Beecher expressly relies.

**II. RICO**

Section 1964(c) of Title 18 creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 . . ." 18 U.S.C. § 1964(c). Here, Beecher asserts two causes of action based on violations of section 1962(b) and one cause of action for conspiracy to violate RICO under section 1962(c) and 1962(d).[2] Beecher alleges that defendants' racketeering activity consisted of acts of mail fraud, wire fraud, and bank fraud. 18 U.S.C. §§ 1341, 1343, 1344. Zumpano and Ruh challenge Beecher's standing to assert these claims and argue that Beecher's claims are nevertheless insufficient as a matter of law.

To have standing, a plaintiff must show: (1) a violation of section 1962; (2) an injury to business or property; and (3) that the violation caused the injury. See Kimm v. Hoon Lee, 196 F. App'x 14, 16 (2d Cir. 2006); Baisch v. Gallina, 346 F.3d 366, 372 (2d Cir. 2003).

To satisfy the second element, a plaintiff must allege injury to business or property "and not, for example, physical,

---

[2] Section 1962, RICO's substantive provision, proscribes four types of racketeering-related activities. 18 U.S.C. § 1962. Section 1962(a) prohibits using income received from a "pattern of racketeering activity" to acquire an interest in or to establish an enterprise engaged in or affecting interstate commerce. Section 1962(b) prohibits the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity. Section 1962(c) prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity. And section 1962(d) proscribes conspiring to violate the prior three subsections.

emotional or reputational harm." World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 518 (S.D.N.Y. 2007) (quoting State Farm Mut. Auto. Ins. Co. v CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 152 (E.D.N.Y. 2005)); see also Kimm, 196 F. App'x at 16 (holding that allegations of reputational harm and risk of lost future business do not constitute injuries to business or property); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that allegations of lost future business commissions do not establish injury to business or property).

To satisfy the third element, a plaintiff must allege that the defendant's purported RICO violation is both the actual and proximate cause of the alleged injury. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 267-68 (1992). The proximate cause requirement is the subject of frequent litigation. However, the Supreme Court of the United States recently clarified that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza, 547 U.S. at 460; see also McBrearty v. Vanguard Grp., Inc., 353 F. App'x 640, 641 (2d Cir. 2009).

The proximate cause requirement often serves as the basis for a conclusion that a plaintiff lacks standing. For example,

the Second Circuit regularly invokes the requirement to conclude that creditors, shareholders, and employees lack standing to assert a RICO claim based on an alleged injury suffered by the entity in which they have an interest. See, e.g., In re. Am. Express S'holders Litig., 39 F.3d 395, 399-401 (2d Cir. 1994) (shareholders lack standing to bring a RICO claim because shareholder injury is wholly derivative of injury to company); Manson v. Stancescu, 11 F.3d 1127, 1130-33 (creditors, shareholders, and employees lack standing to bring a RICO claim because their injuries are derivative of any injury to company); Hecht, 897 F.2d at 22-24 (employee who lost his job and future commissions after refusing to aid and abet his employer's RICO violations lacked standing to bring a RICO claim because the employee's injuries were not proximately caused by the RICO violations).

Additionally, the proximate cause requirement leads courts in this Circuit and elsewhere to conclude that injuries related to lost tax revenue fail to confer standing on individuals (as opposed to on a government entity that has been defrauded). See, e.g., Anza, 547 U.S. at 457-58 (holding that the plaintiff lacked standing where the defendant, a business competitor, allegedly failed to pay taxes, which enabled the defendant to reduce its prices and unfairly compete with plaintiff); Illinois ex rel. Ryan v. Brown, 227 F.3d 1042, 1045-46 (7th Cir. 2000)

(holding that the plaintiff, a taxpayer whose asserted injury was based upon the state's lost revenue following the misappropriation of government funds, lacked standing); Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 219-20 (S.D.N.Y. 2000) ("Where, as here, the primary purpose of an alleged racketeering enterprise is to avoid paying taxes or otherwise defraud the government, indirectly injured parties do not have standing to bring RICO claims."); Schuler v. Bd. of Educ., No. 96 Civ. 4702 (JG), 2000 WL 134346, at *18 (E.D.N.Y. Feb. 1, 2000) ("To the extent defendants' fraudulent actions may have wasted tax dollars or harmed property values, these are not sufficiently direct injuries to sustain a RICO action. Both a waste of tax dollars and a decline in property values are injuries that are not unique to these individual plaintiffs, but are common injuries shared by all inhabitants and taxpayers in the [school district]. As the Supreme Court held . . . standing cannot be premised upon such "generalized grievance[s]" that are "plainly undifferentiated and common to all members of the public."") (quoting United States v. Richardson, 418 U.S. 166, 176-77 (1974)).

Defendants Zumpano and Ruh argue that Beecher has failed to allege any injury to her business or property. Beecher responds that, as a taxpayer, she has suffered an injury because the government was unable to collect taxes from Riverdale and that,

11

because of such tax evasion, her tax burden could not be reduced.

We conclude that, even if Beecher has alleged an injury, there is no possibility that defendants' acts proximately caused her injury. In other words, Beecher's asserted injuries are too remote and are not directly caused by the alleged RICO violations. Notably, the Supreme Court has considered and rejected the argument that tax evasion by a defendant, which ultimately trickles down and injures taxpayers, confers RICO standing on taxpayers. Specifically, the Supreme Court held in Anza:

> [Plaintiff's] theory is that [defendants] harmed it by defrauding the New York tax authority and using the proceeds from the fraud to offer lower prices designed to attract more customers. The RICO violation alleged by [plaintiff] is that the [individual defendants] conducted [the corporate defendant's] affairs through a pattern of mail fraud and wire fraud. The direct victim of this conduct was the State of New York, not [plaintiff]. It was the State that was being defrauded and the State that lost tax revenue as a result.

547 U.S. at 457-58. Thus, to the extent that defendants evaded taxes, any injury to taxpayers, including to Beecher, is not sufficiently direct to sustain a RICO action.[3] Concluding

---

[3] Beecher argues that "[l]ost taxes constitute injury to "business or property" for purposes of RICO." (Affirmation of Roxanne Torres Beecher in Opposition to Defendants Motion for Judgment on the Pleadings, dated May 21, 2010) (citing City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 444-45 (2d Cir. 2008)). However, Smokes-Spirits was reversed by the Supreme

12

otherwise would confer standing based on a generalized and undifferentiated injury.

Beecher has failed to identify any other injury to business or property. However, in an effort to construe her complaint liberally, we identify three additional injuries that Beecher could have identified as a basis for standing. In her amended complaint, Beecher asserts that, as a boarder at River Ridge, she suffered in the following ways: (1) she was charged more than the amount specified in the lease agreement between Riverdale and the County of Westchester; (2) she received an inferior product as a result of defendants' failure to adequately maintain and secure the property; and (3) her horse could have suffered as a result of defendants' hiring unlicensed veterinarians. However, not a single one of these injuries (or any injury that Beecher could plausibly assert based on the pleadings) flows from the alleged RICO violations (i.e., the alleged bank fraud, mail fraud, or wire fraud). Rather, these injuries stem from a distinct set of acts (i.e., a breach of the lease agreement or negligence) that do not satisfy the RICO proximate cause analysis.[4]

---

Court, sub nom. Hemi Grp., LLC v. City of New York, 130 S. Ct. 983, 990 (2010), for the very reason at issue here: the alleged RICO violation was not a proximate cause of plaintiff's purported injury.

[4] The Supreme Court's reasoning in Anza is instructive in this context. As noted above, the plaintiff in Anza argued that defendants committed various acts of mail fraud and wire fraud by failing to charge the required state sales taxes to their customers. As a result, the defendants were allegedly

Finally, we note that our conclusion is consistent with the Supreme Court's rationale in recent RICO decisions. See Anza, 547 U.S. 458-59; Holmes, 503 U.S. at 268-70; see also In re. Am. Express S'holder Litig., 39 F.3d at 401. In Anza and Holmes, the Supreme Court identified the policies that underlie the proximate cause requirement, including: avoiding the difficulty that can arise when a court attempts to ascertain and apportion damages for a remote injury; limiting the risk of duplicative recovery of damages; and considering the likelihood that more direct victims will pursue their own claims. Here, we agree that determining Beecher's damages, if any exist, would be a highly speculative endeavor. We also believe that, if the State of New York and the County of Westchester accepted Beecher's analysis, they could bring lawsuits to remedy any harm suffered.

---

able to undercut plaintiff's prices without affecting defendant's own profit margin. Anza, 547 U.S. at 454. The Supreme Court concluded that the plaintiff lacked standing and reasoned that:

> [t]he proper referent of the proximate-cause analysis is an alleged practice of conducting [defendant's] business through a pattern of defrauding the State. To be sure, [plaintiff] asserts it suffered its own harms when the [defendants] failed to charge customers for the applicable sales tax. The cause of [plaintiff's] asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State).

Id. at 458; see also Hemi Grp., 130 S. Ct. at 990 ("Here, the conduct directly responsible for [plaintiff's] harm was the customers' failure to pay their taxes. And the conduct constituting the alleged fraud was [defendant's] failure to file Jenkins Act reports. Thus, as in Anza, the conduct directly causing the harm was distinct from the conduct giving rise to the fraud.").

14

Accordingly, we conclude that, based on the pleadings, Beecher lacks standing to assert RICO claims against Zumpano and Ruh.

**III. First Amendment**

The First Amendment provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

As is clear from the text of the Amendment, to state a claim for a violation of the First Amendment, a plaintiff must complain of behavior by the government and not that of a private actor. See, e.g., United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 833 (1983); Pub. Utils. Comm'n v. Pollak, 343 U.S. 451, 461-62 (1952); Myron v. Consol. Rail Corp., 752 F.2d 50, 54 (2d Cir. 1985); Ganthier v. N. Shore-Long Island Jewish Health Sys., 298 F. Supp. 2d 342, 348 (E.D.N.Y. 2004). Thus, absent a basis to attribute private actions to a government actor, a First Amendment claim that turns on the conduct of private individuals or entities must be dismissed. See Cooper v. United States Postal Serv., 577 F.3d 479, 491-93 (2d Cir. 2009); Myron, 752 F.2d at 54-56; Henderson v. Ctr. for Cmty. Alts., 911 F. Supp. 689, 707 (S.D.N.Y. 1996).

In her complaint, Beecher alleges that defendants, including Zumpano and Ruh, violated her First Amendment rights by attempting to evict her from River Ridge and harassing her in retaliation for her efforts to expose defendants' conduct. (Am. Compl. ¶¶ 207-18, 256-57.)

However, Beecher has failed to allege any government action in connection with her First Amendment claim nor has she articulated any facts that would cause us to attribute defendants' alleged acts to any government actor.

Thus, we conclude that Beecher's First Amendment claim lacks merit.

**IV. State Claims**

Beecher has also alleged numerous state law causes of action against Zumpano and Ruh. Because we conclude that judgment in favor of Zumpano and Ruh is appropriate in connection with Beecher's federal claims, we decline to exercise supplemental jurisdiction over Beecher's remaining state law claims against Zumpano and Ruh. 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, defendants Zumpano and Ruh's motion for judgment on the pleadings (docket no. 33) is granted. We recognize that the reasoning in this Memorandum and Order would appear to apply to each of the non-moving defendants. Accordingly, we direct plaintiff to show cause by January 20, 2011 why this case should not be dismissed as to the remaining defendants.

Dated:   New York, New York
         December 21, 2010

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

**Plaintiff**
Roxanne Torres Beecher
175 Main Street, Suite 416
White Plains, NY 10601

**Attorney for Defendant**
Richard G. Menaker
Menaker and Hermann
10 East 40th Street
New York, NY 10016-0301